State ex rel. Carpenter vs. The Supervisors of the town of Beloit, &c.

---

STATE ex rel. CARPENTER vs. THE SUPERVISORS OF THE TOWN OF BELOIT, and the COMMON COUNCIL OF THE CITY OF BELOIT.

STATE ex rel. MORGAN vs. THE SAME.

STATE ex rel. BUSHNELL vs. THE SAME.

*MANDAMUS—One writ upon one rule—To enforce judgment of federal court—Commanding municipal authorities to levy tax—Estoppel of judgment debtor.*

1. On a rule to show cause why a peremptory *mandamus* should not issue, only *one* writ can be granted.
2. But if such a rule is entered against several parties against whom several writs would be required, the court may grant the writ as to one and deny it as to the others. [Otherwise, when the relator proceeds by *alternative mandamus*.]
3. A court of this state will issue a *mandamus* in a proper case to enforce a judgment of the district court of the United States for the district of Wisconsin. *Soutter v. City of Madison*, 15 Wis., 30, followed.

4. The party against whom such a judgment was rendered, is estopped from contesting, in the proceeding for a *mandamus*, the validity of the instruments upon which the judgment was based.

5. Whether, where the judgment was against the *town* of Beloit, the *city* of Beloit, subsequently incorporated, and comprising a part of the same territory, would be liable on the judgment, and if so, whether it could contest the validity of said instruments in the proceeding for a *mandamus*, it was not necessary here to decide.

6. Where the law authorizing the issue of town bonds requires supervisors of the town to levy a tax to pay the interest on such bonds, they may be compelled to do so, upon default, by *mandamus*.

7. Where such writ is granted, *quære* whether it should not be framed so as to compel the supervisors to levy an amount sufficient to pay the interest due upon all of such bonds, and not merely those of the relator, thus preventing a multiplicity of suits.

8. This court refuses to discharge a rule requiring the supervisors to show cause why they should not be compelled to levy such tax, on the ground that it appears from the affidavits of the relator that only one supervisor has ever qualified, and that the time allowed by law for the other two to qualify is past.

APPLICATIONS for writs of *Mandamus*.

Chapter 12 of the private and local laws of 1853, authorizes the board of supervisors of the town of Beloit to subscribe for $100,000 of the capital stock of a railroad company, and issue, in payment therefor, bonds of the town; and further provides that said board, "whenever the same shall become necessary, shall annually levy a tax upon the taxable property of said town, sufficient to pay the interest upon said bonds," &c. Said board of supervisors thereupon subscribed for $100,000 of the capital stock of the Racine, Janesville & Mississippi railroad company, and issued bonds of the town therefor. On the 9th of January, 1861, one Foster, recovered a judgment in the district court of the United States for the district of Wisconsin, for the amount of certain coupons for interest upon certain of said bonds, no part of which judgment has ever been paid, nor has the board of supervisors of said town ever levied a tax to pay any portion thereof, or any portion of the interest which has become due on said bonds. The application in the case first above named was made by the relator as assignee of said judgment. His affidavit, among other things, states that

Charles Peck, of Beloit, is chairman of the board of supervisors of said town, duly elected and qualified; that at the last annual election [in the spring of 1865] one Ruble and one Parrish were duly elected supervisors of said town, but neither of them has qualified as such supervisor, and the time for them so to qualify is past, and said board of supervisors is vacant, except that Charles Peck is chairman thereof as above stated; that on the 26th of December, 1861, said Foster caused to be delivered to Simon Ruble and Charles Peck each (they being then a majority of the board of supervisors of said town) an exemplified copy of said judgment, certified under the seal of said district court, with a demand in writing that said board of supervisors should immediately levy a tax upon the taxable property of the town of Beloit sufficient to pay said judgment; that on the 12th of the same month, Foster caused to be delivered to the town clerk of said town a like copy of said judgment, and a like demand. The affidavit further states that by chap. 452, private and local laws of 1856, approved March 31st, 1856, a part of the territory which before 1853, and until the passage of said last named act, was comprised in the town of Beloit, was erected into a city, and so remains; that certain persons named are the mayor and members of the common council of said city; and that said city has never levied any tax to pay any part of the interest which has become due on said bonds. The affidavit then states the amount of taxable property on the assessment roll of the town of Beloit last preceding the incorporation of the city, the proportion thereof which belonged to the city and town respectively, and the amount of taxable property on the assessment rolls of the city and town respectively for each subsequent year until the commencement of this proceeding; and alleges that the interest which fell due on said bonds February 10, 1856, and all interest due at that time for prior years, ought to have been levied upon the property in the assessment roll of said town for 1855, and the amount of interest falling due February 10th, 1857, and each year

thereafter, ought to have been levied upon the respective assessment rolls of said town and city.

Upon this affidavit and exhibits, including a certified copy of the record of the action in the district court, and the judgment there rendered against the town in favor of said Foster, a rule was obtained upon Charles Peck, chairman and supervisor of the board of supervisors of the town of Beloit, and upon the persons named as mayor and members of the common council of the city of Beloit, requiring them to show cause why a peremptory *mandamus* should not issue, directed to the said board of supervisors, commanding them to levy a tax upon all the taxable property of said town sufficient to pay the amount due on said judgment; or, if the court was of opinion that such writ ought not to issue, then to show cause why a peremptory writ should not issue commanding said board of supervisors to levy a tax upon all the taxable property of said town, sufficient to pay a certain amount to be named in said writ, or such proportion of the amount due on said judgment as the court should be of opinion said town ought to pay, to be named in said writ, and also commanding said common council of the city of Beloit to levy a tax upon all the taxable property of said city sufficient to pay a certain amount to be named in said writ, or such portion of said judgment, etc., etc.; or, why several peremptory writs of *mandamus* should not be issued, one directed to said board of supervisors, and the other to said common council, respectively commanding them to levy, &c. &c. A similar rule was obtained in each of the other two cases above named, upon a similar state of facts.

The respondent moved to discharge the rule, on the following grounds : 1. Not sufficient facts set forth. 2. Want of jurisdiction in this court. 3. The application is for a writ or writs against separate and distinct corporations, and for separate and several writs against each corporation, and does not claim a certain, definite or fixed liability against either of said corporations.

*Palmer & Hooker*, and *E. G. Ryan*, for the motion.

*Mat. H. Carpenter, contra.*

COLE, J. In each of the above cases a rule was granted, requiring the board of supervisors of the town of Beloit, and the common council of the city of Beloit, to appear and show cause why a peremptory writ or writs of *mandamus* should not be granted, commanding them to proceed and levy a tax to pay the judgments described in the applications. It is now moved, on behalf of the respondents, that this rule be vacated and discharged for various reasons. We are satisfied that the motion must prevail so far as the city of Beloit is concerned, because we deem it irregular practice to ask for several writs of *mandamus* in a single rule. See Tapping on Mandamus, Vol. 74 Law Lib., p. * 299 ; *The Queen v. the Mayor of Bridgeworth*, 10 Ad. & El., 66 (37 Eng. C. Law, p, 45.) It is very apparent that the duty to be performed by the board of supervisors and the common council of the city is several in its nature. It is to proceed and levy a tax upon the property within their respective districts, to pay these judgments. The judgments are in form against the town alone. But for the purposes of this motion we assume that the court, on a proper application, would grant a writ of *mandamus* against the city, compelling it to pay its just proportion of them. We do not, however, wish to be understood as deciding that question at this time. It is left open *ex industria* for further argument. From the fact that the city of Beloit was organized out of territory originally embraced within the limits of the town of Beloit, after the bonds (the interest of which was the foundation of the judgments above referred to) were issued, and from the various provisions of the city charter (sections 12, 16 and 17, chap. 10, Priv. Laws 1856, p. 990–91), it is claimed that these judgments are conclusive upon the city, and that it can be compelled by *mandamus* to pay its share of them. This may be so; still the practice of moving for one or more writs of *mandamus* in the same rule we deem improper, to this extent at least, that only one writ should issue

on such a rule. But because too much is asked for in the rule, or because the rule is in the alternative, that a writ be granted against the town and against the city, or that several peremptory writs be granted, it is argued that the whole rule should be discharged. For, it is said, the relator must show a clear legal right to all he asks for, and if he demand too much, judgment will be given for the respondent. Such seems to be the practice when an alternative writ is issued in the first instance. Then, if the alternative writ asks for too much, the peremptory writ will not be awarded. For, the courts say, the peremptory writ must follow the alternative *mandamus*, and there cannot be judgment for the relator for part and for the respondent for the other part. *The People v. The Supervisors of Dutchess*, 1 Hill, 50; *McSpedon et al. v. The Board of Supervisors &c.*, 18 How. Pr. R., 152. It is proper to say that our attention was not called to this point of practice in the case of the *State ex rel. White et al. v. Winn* (19 Wis., 304), or probably the writ would not have been granted in that case. We certainly did not intend to establish any new rule of practice by the decision then made; and therefore we do not feel committed upon a point not made on the argument, and to which our attention was not directed. But a different practice seems to obtain where a party applies for a peremptory writ on a rule to show cause. There, Tapping says, if the rule be not such as the relator is contented with, or be misconceived, the court, for the purposes of justice, will mould it according to the exigencies of each particular case. Tapping on Mandamus, marg. pages 306–7, 328; *The King v. The Church Trustees of St. Pancras*, 3 Ad. & El., 535 (30 E. C. L., 146); *Rex v. The Lord and Stewards &c.*, 2 Smith, 54. If necessary, the court will strike out part of the rule *nisi*, and make the rule absolute in a modified form. So, if the relator shows a good ground for a peremptory writ against the town, the entire rule to show cause should not be discharged.

The judgments mentioned in the first two applications were obtained in the district court of the United States; and it is insisted that no *mandamus* to enforce them can properly issue from the state courts. This objection has been already overruled in *Soutter v. The City of Madison*, 15 Wis., 30, and need not be further considered.

It is very evident that the authorities of the town of Beloit cannot, on these applications, question the validity of the bonds and coupons upon which the judgments were rendered. Whether the city is in any different attitude, we need not stop to determine. But clearly the town, having had a full and ample opportunity to raise all such questions, and in fact after having once presented them to the consideration of the court, must now be estopped by the decision of them. See the case of *Bushnell v. Beloit*, 10 Wis., 195, where many points raised upon the argument of this motion were directly overruled.

And this brings us to the main question, whether the applications make a good case for issuing a *mandamus* requiring the town authorities to proceed and levy a tax to pay these judgments. That question, in principle, has already been decided by this court. *Soutter v. The City of Madison, supra; State ex rel. Van Vliet v. Wilson et al.*, 17 Wis., 687. By the law under which these bonds were issued, it was made the duty of the board of supervisors of the town of Beloit, whenever it should be necessary, to annually levy a tax upon the taxable property of the town sufficient to pay the interest upon such bonds after deducting the dividends due to such town on its shares of stock. Sec. 3, ch. 12, Priv. Laws of 1853. Here is a clear, distinct and specific duty imposed by law upon the board of supervisors of the town, and no reason has been suggested why they should not perform it. And if the supervisors wholly neglect to make any provision for paying the interest as it falls due, by levying a tax, no principle of law is better settled than that they may be compelled to perform this duty by *mandamus*. See the authorities referred to in *The Commonwealth ex rel. Thomas v. The*

*Commissioners of Alleghany Co.*, 32 Pa. St., 218 ; *Commonwealth ex rel. Hamilton v. Select and Common Council of Pittsburgh*, 34 id., 496 ; *Commonwealth ex rel. Middleton v. Commissioners of Alleghany Co.*, 37 id., 237.

It is suggested that if the writ goes at all, it should be to compel the board to assess and collect a sufficient amount to pay the interest upon all the bonds, so that each holder may not have to institute proceedings for himself, thus subjecting the town to a multiplicity of suits. There is certainly great force in this view, and if deemed correct, the writ, should it be granted, can be so framed.

But again, it is said that the rule against the town should be discharged because the applications show that a vacancy exists in the board of supervisors—the chairman of the board only having qualified—and therefore the writ would be nugatory, as there is no power in any body to properly execute it. Whether the three supervisors of the town can alone perform the duty of levying the tax for the payment of the interest due upon the bonds, is a question we will not decide upon this motion. A demand was made for the payment of two of the judgments when the board was full, and it may be very questionable whether the supervisors can shirk their responsibility or evade their duty by resignation or a refusal to qualify when elected. But however this may be, we do not think the rule against the town should be discharged for anything appearing on the applications.

It follows from our views, that the motion to discharge the rule, so far as the city is concerned, should be granted, and denied as to the town.

*By the Court.*—Ordered accordingly.